UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHAREE NELSON,<br><br>    Plaintiff,<br><br>  v.<br><br>JOSH TEWALT; BRIAN UNDERWOOD; NOELLE BARLOW; AMANDA GENTRY; GOVERNOR BRAD LITTLE; SGT. STEIZER; ALEX J. ADAMS; MATTHEW GAMETTE; ANTHONY GEDDES; SCOTT BEDKE; RYAN POLLARD; ALSAIF AN BADY; BENJAMIN LEE; JULIE BYANT; ZACH GODSILL; SGT. DAX ANDERSON; LT. WREN; DIANA DRAKE; SHIRLEY WILLIAMS; CHAD PAGE; DIRECTOR OF IDAHO TRANSPORTATION DEPARTMENT; DIRECTOR OF WADDA POTATO FARMS; DIRECTOR OF ZOROCO BOISE; DIRECTOR OF SIMMS; ADMINISTRATOR OF DIVISION OF FINANCIAL MANAGEMENT FOR THE STATE OF IDAHO; TYSON AUBREY; MIKE BORBON; RICK HAMLIN; JOSEPH MENA; MR. or MS. LLOYD, MR. or MS. KLINGENSMITH, and MR. or MS. BIRKMANN,<br><br>    Defendants. | Case No. 1:24-cv-00333-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Charee Nelson's Complaint because of Plaintiff's status as an inmate and in forma pauperis request. A "conditional filing" means that a plaintiff must obtain authorization from the Court to proceed. Upon screening, the Court must dismiss claims that state a frivolous or malicious claim, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

Having reviewed the record, the Court concludes that the Complaint fails to state a claim upon which relief may be granted. Accordingly, the Court enters the following Order directing Plaintiff to file an amended complaint if Plaintiff intends to proceed.

1.      **Standards of Law for Screening Complaints**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state an actionable claim, a plaintiff must provide "enough factual matter (taken as true) to suggest" that the defendant committed the unlawful act, meaning that sufficient facts are pled "to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of

a cause of action will not do.'" *Iqbal*, 556 US. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## 2.    Factual Allegations

Plaintiff is an inmate in the custody of the Payette County Jail. At the time the Complaint was filed, Plaintiff was held in the Ada County Jail.

Plaintiff names numerous county and state employees as Defendants but does not specifically identify any action taken by any particular Defendant. Instead, the Complaint states that "they" (unidentified defendants) "tortured" Plaintiff and others by:

> Intimidation, sexual coercion, illegally collecting debts as C.O.S. and interest of forfeited street time, illegally adding time already served back on to sentences that were maxed under Idaho law, false PREA [Prison Rape Elimination Act] reporting, tampering with official documents, retaliation, intimidating witnesses, loss of life, raising classification levels of non-violent offenders using LSI score to justify denial of parole under Idaho's Justice Reinvestment Reporting Requirements, lying to obtain federal grant money by reporting false PREA compliance under 34 U.S.C. 30305, ineffective counsel, using faulty lab results on drug convictions including TPW's, perjury on affidavits.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 3

*Compl.*, Dkt. 3, at 3.

Plaintiff brings claims under 42 U.S.C. § 1983, asserting violations of the First, Fourth, Eighth, and Fourteenth Amendments. *Id*. Plaintiff also brings claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*., and the Prison Rape Elimination Act ("PREA"), 34 U.S.C. § 30302 *et seq*. Finally, Plaintiff asks the Court to exercise supplemental jurisdiction over state law claims, but the Complaint does not identify any such claims. *See Compl*. at 1.

**3.    Discussion**

Plaintiff has stated no claim upon which Plaintiff can proceed with the vague allegations in the Complaint. The Court will, however, grant Plaintiff 28 days to amend the Complaint. Any amended complaint should take into consideration the following.

In simplified terms, for each defendant, Plaintiff must include in the amended complaint the "who, what, when, where, why, and how" of each allegedly wrongful act that each defendant committed. A pleading is more understandable if it is organized by claim for relief and defendant, rather than asserting a broad set of facts at the beginning of a pleading that are unrelated to a list of defendants elsewhere in the pleading.

For each particular constitutional violation against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular constitutional

provision Plaintiff alleges has been violated; (6) facts alleging that the elements of the violation are met; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief sought from the defendant. Plaintiff should do the same for each defendant, in turn.

For any state law claims, Plaintiff also must set forth facts explaining the "who, what, when, where, why, and how" of each allegedly wrongful act that each defendant committed, showing that plausible facts exist to support the particular state law claim.[1]

The Court now provides the following standards of law, which might or might not apply to Plaintiff's claims.

### A.     Section 1983 Claims

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

---

[1]  For example, to state a claim for negligence, a plaintiff must provide adequate factual allegations showing the following: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of the defendant's duty; (3) a causal connection between the defendant's conduct and the plaintiff's injury; and (4) actual loss or damage." *Nelson v. Anderson Lumber Co.*, 99 P.3d 1092, 1100 (Idaho Ct. App. 2004).

That is, governmental officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045. Personal liability under § 1983 "cannot be based on prison [or jail] conditions beyond the control of a defendant." *Pinto v. Nettleship*, 737 F.2d 130, 133 (1st Cir. 1984). Further, a defendant whose only role in a constitutional violation involved the denial of an administrative grievance cannot be held liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists … a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in conduct showing "a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 6

A claim that a supervisor or training official failed to adequately train subordinates ordinarily requires that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training official] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). That is, to maintain a failure-to-train claim, a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 72 (2011).

Likewise, "a failure to supervise that is sufficiently inadequate may amount to deliberate indifference" that supports a § 1983 claim, but there generally must be a pattern of violations sufficient to render the need for further supervision obvious. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted). That is, if a supervisory or training official had "knowledge of the unconstitutional conditions" through such a pattern of violations—including knowledge of the "culpable actions of his subordinates"—yet failed to act to remedy those conditions, that official can be said to have acquiesced "in the unconstitutional conduct of his subordinates" such that a causal connection between the supervisor and the constitutional violation is plausible. *Starr*, 652 F.3d at 1208.

To bring a § 1983 claim against a local governmental entity, such as a city or a county, a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). Under *Monell*, the requisite elements

of a § 1983 claim against such an entity are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). An entity also "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority" or when "such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 8

i.     First Amendment Claims

The First Amendment includes the right to be free from retaliation for exercising constitutional rights. An inmate asserting a retaliation claim must show the following: "(1) ... that a state actor took some adverse action against the inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) [that] the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

"[B]are allegations" of a retaliatory motive are insufficient to support a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."). Rather, when analyzing a prison official's proffered reasons for allegedly retaliatory conduct, the Court must "afford appropriate deference and flexibility" to that official. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (internal quotation marks omitted).

Not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry asks whether the official's action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks omitted). If it would not, then "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted). *See also*

*Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) ("The [*de minimis*] standard achieves the proper balance between the need to recognize valid retaliation claims and the danger of federal courts embroiling themselves in every disciplinary act that occurs in state penal institutions.") (internal quotation marks and alteration omitted).

A plaintiff asserting a retaliation claim under § 1983 also "must show a causal connection between a defendant's retaliatory animus and [the plaintiff's] subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006) (*Bivens* action). Retaliatory motivation is not established simply by showing an adverse action by the defendant *after* protected speech. Instead, the plaintiff must show a nexus between the two. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'"). Therefore, although the timing of an official's action can constitute circumstantial evidence of retaliation—if, for example, an adverse action was taken shortly after the official learned about an inmate's exercise of protected conduct—there generally must be something more than mere timing to support an inference of retaliatory intent. *Pratt*, 65 F.3d at 808.

The causal nexus requirement of a retaliation claim is a "but-for" causation test. If the adverse action would have been taken even without the inmate's exercise of protected conduct, the plaintiff cannot satisfy the causation element of the retaliation claim. *Hartman*, 547 U.S. at 260.

Finally, even if an inmate proves that his protected conduct was the but-for cause of an adverse action by a prison official, the inmate's retaliation claim fails so long as

that action also reasonably advanced a legitimate penological interest. The state unquestionably has a legitimate interest in maintaining institutional order, safety, and security in its prisons, *Rizzo*, 778 F.2d at 532, and the "plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains," *Pratt*, 65 F.3d at 806.

    ii.  <u>Fourth Amendment Claims</u>

   It is unclear how the Fourth Amendment might apply to Plaintiff's allegations. That amendment protects against unreasonable searches and seizures and "requires, as a general matter, that police procure a warrant before searching or seizing property." *United States v. Ewing*, 638 F.3d 1226, 1231 (9th Cir. 2011). A "search" occurs when a state actor infringes "an expectation of privacy that society is prepared to consider reasonable."[2] *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). A "seizure" of property occurs "when there is some meaningful interference with an individual's possessory interests in that property." *Id*.

   Warrantless searches and seizures inside a home are presumptively unreasonable, but there are exceptions to this warrant requirement. For example, "law enforcement officers may make a warrantless entry onto private property to fight a fire and investigate its cause, to prevent the imminent destruction of evidence, or to engage in hot pursuit of a fleeing suspect." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (internal quotation

---

[2] Prisoners have no reasonable expectation of privacy in their prison cells entitling them to protection unreasonable searches and seizures. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Indeed, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id*. at 528 n.8.

marks and citations omitted). A warrant also is not required for an officer to enter a home to assist persons "who are seriously injured or threatened with such injury," *id.*, and "police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime, and the vehicle is readily mobile," *Ewing*, 638 F.3d at 1231 (internal quotation marks omitted).

The Fourth Amendment also protects against the use of excessive force by police officers during an arrest. Such claims require the Court to balance "the nature and quality of the intrusion on a person's liberty with the countervailing governmental interests at stake." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1053–54 (9th Cir. 2007). First, the "quantum of force" must be assessed. Second, the governmental interests at stake must be analyzed in light of the following factors: (1) the severity of the crime for which the plaintiff was arrested; (2) whether the plaintiff posed a threat to the safety of the officers or others; (3) whether the plaintiff was actively resisting arrest or attempting to flee; and (4) the availability of alternative methods of subduing the plaintiff. *Id.*

### iii.    Eighth Amendment Claims

The Eighth Amendment to the United States Constitution protects convicted prisoners against cruel and unusual punishment and guarantees the right to minimally adequate conditions of confinement. "[T]he Constitution does not mandate comfortable prisons, and prisons … cannot be free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). However, though prison conditions may be restrictive—even harsh—without violating the Eighth Amendment, prison officials are required to provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Id.* at 347;

*Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

To state a claim under the Eighth Amendment, a prisoner must show that he is (or was) "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

As for the objective prong of the analysis, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather, the deprivation alleged must be objectively sufficiently harmful or, in other words, sufficiently "grave" or "serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see Whitley*, 475 U.S. at 319 ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.") (internal quotation marks and alteration omitted).

With respect to the subjective prong of an Eighth Amendment violation, "deliberate indifference entails something more than mere negligence, [but] is satisfied

by something less than acts or omissions for the very purpose of causing harm or with

knowledge that harm will result." *Farmer*, 511 U.S. at 835. "To be cruel and unusual

punishment, conduct that does not purport to be punishment at all must involve more than

ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319.

To exhibit deliberate indifference, a defendant "must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and he

must also draw the inference." *Farmer*, 511 U.S. at 837. "If a [prison official] should

have been aware of the risk, but was not, then the [official] has not violated the Eighth

Amendment, no matter how severe the risk." *Gibson v. Cty. of Washoe*, 290 F.3d 1175,

1188 (9th Cir. 2002), *overruled on other grounds by Castro*, 833 F.3d 1060. Moreover,

even prison officials who *did* actually know of a substantial risk to inmate health or

safety will not be liable under § 1983 "if they responded reasonably to the risk, even if

the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Prisoners have an Eighth Amendment right to be free from sexual abuse by prison

officials. *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000). Such claims are

analyzed using an excessive force framework. *Bearchild v. Cobban*, 947 F.3d 1130, 1140

(9th Cir. 2020).

Sexual abuse by a prison guard is conduct which is "inconsistent with

contemporary standards of decency and repugnant to the conscience of mankind," and

therefore violates the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986)

(internal quotation marks omitted). "Because there is no legitimate penological purpose

served by a sexual assault, the subjective component of malicious and sadistic intent is

presumed if an inmate can demonstrate that a sexual assault occurred." *Bearchild*, 947 F.3d at 1143 (9th Cir. 2020) (internal quotation marks omitted). That is, "any act constituting sexual assault is by definition both excessive and unnecessary." *Id*. at 1145.

An inmate states a colorable sexual abuse claim by plausibly alleging that "a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *Id*. at 1144. If an official's conduct "began as an invasive procedure that served a legitimate penological purpose," but then allegedly morphed into sexual abuse, "the prisoner must show that the [official's] conduct exceeded the scope of what was required to satisfy whatever institutional concern justified the initiation of the procedure." *Id*. at 1145.

Although threats and verbal abuse are generally insufficient to state a civil rights violation, sexual harassment can constitute "calculated harassment unrelated to prison needs," which violates the Eighth Amendments. *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). However, an isolated incident of sexual harassment does not rise to the level of a constitutional violation unless it is severe. *See Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (no Eighth Amendment violation where officer "approached [an inmate] while [the inmate] was still on the toilet, rubbed [the officer's] thigh against [the inmate's] thigh, began smiling in a sexual [context], and left the cell laughing."); *Somers v. Thurman*, 109 F.3d 614, 616, 623-24 (9th Cir. 1997) (no Eighth Amendment violation where female officers conducted visual body cavity searches of male inmates and

watched the inmates shower, all while pointing at the inmates, gawking, and joking among themselves).

The Eighth Amendment also prohibits incarceration beyond a prisoner's full-term release date. To prevail on such a claim, a plaintiff must show that the defendant "was deliberately indifferent to [the prisoner's] right to be released at the end of [the] sentence by knowing or having reason to know of a pattern of late releases and failing to take steps to correct the problem." *Strong v. Dir. of Idaho Dep't of Correction*, No. CV-04-581-EJL, 2006 WL 3355005, at *4 (D. Idaho Nov. 16, 2006) (unpublished). The prisoner must also show that the defendant actually caused Plaintiff to be incarcerated past the full-term release date. *Id.* at *7.

### iv.     Fourteenth Amendment Claims

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person cannot obtain relief on a due process claim unless he demonstrates that he was deprived of one of these protected interests. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989). Because prisoners' liberty is necessarily circumscribed as a result of conviction, prisoners have a liberty interest in freedom from restraint only if a change occurs in confinement that imposes an "atypical and significant hardship … in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

There is no constitutional right to parole, and, as a result, an inmate can bring a procedural due process challenge to a parole decision only where there is a state-created liberty interest in parole. *See Swarthout v. Cooke*, 131 S. Ct. 859, 862 (2011) ("There is

no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners."); *Board of Pardons v. Allen*, 482 U.S. 369, 380-81 (1987). The Idaho Supreme Court has held that there is no such state-created liberty interest in parole. *Banks v. State of Idaho*, 920 P.2d 905, 908 (Idaho 1996) ("[P]arole is not an automatic right or liberty interest."). Therefore, claims challenging the denial of parole in Idaho are implausible.

If an inmate shows that he or she had a liberty interest protected by the Due Process Clause, the factfinder must then determine what process was due. This determination must be made on a case-by-case basis. *Wolff v. McDonnell*, 418 U.S. 539, 560 (1974) ("Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.") (internal quotation marks and alteration omitted). The "essence of due process" is notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976).

Due process is a flexible concept and calls for such procedural protections as the particular situation demands. *Id*. Three factors inform whether an inmate has received the process to which he was due: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

In the prison context, "[t]he State's first obligation must be to ensure the safety of guards and prison personnel, the public, and the prisoners themselves." *Wilkinson v. Austin*, 545 U.S. 209, 227 (2005). Therefore, when reviewing a prison's procedures with respect to level-of-custody or restrictive housing determinations, the third *Mathews* factor—the government's interest—is "a dominant consideration." *Id.*

The Due Process Clause also protects pretrial detainees against jail conditions that amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Detainees' conditions-of-confinement claims are analyzed using a standard of "objective deliberate indifference." *Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018). Under that standard, a detainee must establish the following elements:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125. The application of this standard "will necessarily turn on the facts and circumstances of each particular case." *Id.* (internal quotation marks and alteration omitted).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 18

The Fourteenth Amendment also includes the Equal Protection Clause. The purpose of that clause "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal quotation marks omitted). Equal protection claims alleging disparate treatment or classifications are subject to a heightened standard of scrutiny when they involve a "suspect" or "quasi-suspect" class, such as race or national origin, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g., City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440 (1985). Otherwise, equal protection claims are subject to a rational basis inquiry. *See Heller v. Doe*, 509 U.S. 312, 319–20 (1993).

Under the rational basis test, the relevant inquiry is whether the state action is "patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Vermouth v. Corrothers*, 827 F.2d 599, 602 (9th Cir. 1987). An inmate can prevail on this test only if (1) he or she is similarly situated with persons who are treated differently by the defendant, and (2) the defendant has no rational basis for the dissimilar treatment. "[E]ven where similarly-situated persons are treated differently by the state, state action is presumed constitutional and will not be set aside if any set of facts reasonably may be conceived to justify it." *More v. Farrier*, 984 F.2d 269, 271 (9th Cir. 1993) (internal quotation marks omitted). Absent evidence of invidious discrimination, the federal courts should defer to the judgment of prison officials. *Id.* at 272; *see also Youngbear v. Thalacker*, 174 F. Supp. 2d 902, 916 (D. Iowa 2001) ("There can be no

'negligent' violations of an individual's right to equal protection…. There is no evidence from which the court may infer that the defendants' asserted reasons for delaying the construction of a sweat lodge at the [prison] were a pretext for discrimination.").

> ### B.    RICO Claims

RICO provides as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). RICO does not abrogate a state's sovereign immunity, *see Bair v. Krug*, 853 F.2d 672, 675 (9th Cir. 1988), and governmental entities are not subject to suit under RICO because they "are incapable of forming a malicious intent," *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir. 1991).

A finding of liability under § 1962(c) requires "(1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). A pattern of racketeering requires proof of two or more predicate acts of racketeering that are related and that are in furtherance of a single criminal scheme. *Id*. at 193. A list of racketeering acts upon which a RICO action must be based is set forth in 18 U.S.C. § 1961.

Subsection 1961(1)(A) defines a racketeering activity as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in

obscene matter, or dealing in a controlled substance." Additionally, subsection

1961(1)(B) describes a racketeering activity as any act indictable as a crime under certain

provisions of Title 18 of the United States Code. It is well-established that "[c]ivil rights

violations and injury to reputation do not fall within the statutory definition of

'racketeering activity.'" *Bowen v. Oistead*, 125 F.3d 800, 806 (9th Cir. 1997).

### C.     PREA Claims

PREA "was enacted to address the problem of rape in prison by creating and

applying national standards to prevent, detect, and respond to prison rape, and by

ensuring compliance of state and federal prisons by conditioning eligibility for federal

grant money on compliance with the standards." *Barber v. Cox*, No. 1:17-CV-00318-

BLW, 2019 WL 454090, at *1 n.1 (D. Idaho Feb. 5, 2019) (unpublished). However,

PREA does not provide a private right of action enforceable by individual prisoners. *Id.*;

*see also Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir.) (unpublished) (collecting

cases), *cert. denied*, 136 S. Ct. 238 (2015); *see also, e.g., Hill v. Hickman Cty. Jail*, 2015

WL 5009301 (M.D. Tenn. August 21, 2015) (unpublished) (dismissing PREA claim for

lack of private right of action); *Montgomery v. Harper*, 2014 WL 4104163, at *3 (W.D.

Ky. Aug. 19, 2014) (unpublished) ("[T]his Court concludes that the PREA creates no

private right of action."); *Holloway v. Dep't of Corr.*, 2013 WL 628648, at *2 (D. Conn.

Feb. 20, 2013) ("There is nothing in the PREA that suggests that Congress intended it to

create a private right of action for inmates to sue prison officials for non-compliance to

the Act.").

### D.      Claims Related to State Criminal Charges or State Criminal Conviction

At least some of Plaintiff's claims appear to implicate either ongoing state criminal charges or a state court conviction. If a civil rights plaintiff challenges pending state criminal charges, the federal courts usually must abstain from hearing the action. A court can hear such an action only if "the threat to the plaintiff's federally protected rights … cannot be eliminated by his defense against a single criminal prosecution." *Younger v. Harris*, 401 U.S. 37, 46 (1971).

For a court properly to abstain from hearing a case under the *Younger* doctrine, three factors must be present: (1) there must be an ongoing state judicial proceeding; (2) the proceeding must implicate an important state interest; and (3) there must be an adequate opportunity in the state proceeding to raise the constitutional challenge. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Where abstention is appropriate, a court may entertain the action only if "extraordinary circumstances" are present, including: (1) where irreparable injury is both "great and immediate"; (2) where the state law is "flagrantly and patently violative of express constitutional prohibitions"; or (3) where there is a showing of "bad faith, harassment, or any other unusual circumstances that would call for equitable relief." *Younger*, 401 U.S. at 46, 53–54.

If a plaintiff brings a civil rights claims challenging a criminal *conviction*, then the federal court usually must dismiss the case under the doctrine announced in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the United States Supreme Court held that a

civil rights claim "is not cognizable under § 1983" if the plaintiff's success would "render a conviction or sentence invalid." *Id*. at 486–87.

That is, if a favorable verdict in a civil rights action "would necessarily imply the invalidity" of the plaintiff's conviction, the plaintiff must first show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 487. As the Supreme Court later clarified, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

Further, the Supreme Court has made it clear that when a state prisoner seeks "a determination that he is entitled to immediate release or a speedier release from ... imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Accordingly, release from incarceration is not an available remedy in a § 1983 action.

**4.      Standards for Amended Complaint**

If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of his constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehrler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection

between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotation marks and alteration omitted).

Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate, numbered paragraph. The amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as an "Amended Complaint." Plaintiff's name and address

should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files an amended complaint, Plaintiff must also file a "Motion to Review the Amended Complaint." If Plaintiff does not amend within 28 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1.     The Complaint fails to state a claim upon which relief may be granted. Plaintiff has 28 days within which to file an amended complaint as described above. If Plaintiff does so, Plaintiff must file (along with the amended complaint) a Motion to Review the Amended Complaint. Alternatively, Plaintiff may file a Notice of Voluntary Dismissal if Plaintiff no longer intends to pursue this case.[3]

2.     If Plaintiff does not file a timely amended complaint, this case may be dismissed with prejudice and without further notice for failure to state a claim upon which relief may be granted, failure to prosecute, or failure to

---

[3] A voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1) is not a dismissal for frivolity, for maliciousness, or for failure to state a claim upon which relief may be granted and, therefore, does not count as a "strike" under 28 U.S.C. § 1915(g).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 25

comply with a Court order. *See* 28 U.S.C. §§ 1915 and 1915A; Fed. R. Civ. P. 41(b).

3.    Because an amended complaint is required for Plaintiff to proceed, all of Plaintiff's pending motions (Dkt. 5, 6, 9, 14, 15, 16, and 18) are DENIED AS MOOT.

4.    Plaintiff's request for appointment of counsel (contained in the Complaint) is DENIED without prejudice. Plaintiff may renew the request for counsel in an amended complaint.

DATED: October 15, 2024

_____

B. Lynn Winmill
U.S. District Court Judge